UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-24-2

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25cr48 (KAD)(RAR) |
| v. | VIOLATIONS: |
| PAUL R. STEED | 18 U.S.C. § 1343<br>(Wire Fraud)<br><br>26 U.S.C. § 7201<br>(Tax Evasion) |

INDICTMENT

The Grand Jury charges:

COUNTS ONE THROUGH FOUR
(Wire Fraud—MCNA LLC)

1. Beginning in at least July 2005, and at all relevant times, defendant PAUL R. STEED ("STEED") was a resident of Stamford, Connecticut.

2. Beginning in or about 2011, STEED was employed by Mars Wrigley, a fully owned subsidiary of Mars, Inc. ("Mars"), and worked remotely from his home in Stamford. STEED served as Global Price Risk Manager for Mars Wrigley's Global Cocoa Enterprise.

3. At all relevant times, Mars was an American multinational manufacturer of confectionery, pet food, and other food products and a provider of animal care services and was headquartered in McLean, Virginia.

The Scheme and Artifice

4. From in or about 2016 through and including September 2023, in the District of Connecticut and elsewhere, STEED, knowingly and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for

the purpose of executing such scheme did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

5. The purpose of the scheme and artifice was for STEED to enrich himself by diverting proceeds from the assets of Mars Wrigley and Mars to MCNA LLC, a company that he falsely represented to be a Mars entity, and to a bank account for MCNA LLC that he set up to receive those proceeds.

Manner and Means of the Scheme and Artifice

6. It was part of the scheme and artifice that STEED carried out the following acts, among others.

7. On or about August 25, 2016, STEED caused the filing of Articles of Organization for MCNA LLC with the Connecticut Secretary of the State. The principal office address was listed as STEED's home address in Stamford, with STEED's mother as the organizer and agent. The new company was not affiliated with Mars or Mars Wrigley, despite its name's similarity to that of a Mars entity ("Mars Chocolate North America").

8. On or about November 3, 2016, STEED opened a bank account for MCNA LLC at People's United Bank, N.A., a federally insured financial institution with its headquarters in Connecticut, with STEED as sole signatory. The account was opened in Connecticut, with STEED's home address in Stamford. In or about 2022, People's United Bank merged with M&T Bank, also a federally insured financial institution, and STEED maintained the MCNA LLC account with M&T Bank. At all times, the account itself was domiciled in Connecticut.

*Steed Diverts Sale Proceeds of Re-Export Credits to MCNA*

9. As part of his employment, STEED was responsible for managing Mars Wrigley's participation in the United States Department of Agriculture ("USDA") Sugar-Containing Products Re-Export Program (the "Program"). Among other features of the Program, participating United States companies could buy world-priced sugar from any licensed refiner for use in products to be exported to the world market. The Program was designed to put U.S. manufacturers of sugar-containing products on a level playing field in the world market. The name of the Program was sometimes used interchangeably within Mars with the name of a related USDA program, the Refined Sugar Re-Export Program.

10. Under the Program, Mars Wrigley would purchase raw cane sugar and refined sugar from U.S. sugar refineries. Then Mars Wrigley would manufacture products using sugar and create a list of all products exported. Mars Wrigley would file the export information with the USDA on a quarterly basis. The USDA then would issue sugar re-export credits to Mars Wrigley, which could then sell those credits to U.S. sugar refineries. Finally, the U.S. sugar refineries could use the credits to import raw cane sugar duty-free.

11. On several occasions, beginning at least in or about November 2016 and continuing through in or about September 2023, STEED contracted with U.S. sugar refineries to sell Mars re-export credits. Rather than provide the refineries with payment instructions that included legitimate Mars Wrigley bank accounts or addresses, STEED instructed the refineries to pay his company MCNA LLC and the People's United MCNA LLC bank account or another bank account at STEED's direction, falsely representing that they were legitimate Mars Wrigley payment instructions.

12. For example, on or about January 20, 2022, STEED caused Imperial Sugar Company to pay $4.2 million to MCNA LLC for re-export credits; on or about September

3

27, 2023, STEED caused U.S. Sugar's Savannah Refinery to pay $4,822,606.25 to MCNA LLC for re-export credits; and on or about July 16, 2019, STEED caused CSC Sugar, LLC to pay $1,044,564.00 to MCNA LLC for re-export credits. In each example, STEED diverted the proceeds of the sale of Mars Wrigley's re-export credits to his own account and for his own uses, without permission from Mars Wrigley.

*Steed Diverts Proceeds from ICE Shares to MCNA*

13. At all relevant times, Intercontinental Exchange, Inc. ("ICE") was a financial services company that operated financial exchanges and clearing houses and was headquartered in Atlanta, Georgia. In or about 2007, ICE acquired the New York Board of Trade ("NYBOT"), a commodities exchange that traded soft commodities, including sugar and cocoa, and operated the exchange as ICE Futures U.S.

14. Because Mars had owned two seats on the NYBOT, it was awarded ICE shares in connection with ICE's acquisition. Since at least 2013, ICE paid its shareholders a portion of company earnings as quarterly dividends.

15. Computershare Limited ("Computershare") was an Australian stock transfer company that provided corporate trust, stock transfer, and employee share plans. ICE utilized Computershare for stock-related services, including payment of dividends and stock transfer.

16. On or about August 5, 2017, STEED caused a change of address to be registered with Computershare that inserted STEED's name as Computershare's point of contact for Mars Wrigley in connection with the ICE shares.

17. On or about August 21, 2017, STEED caused the deposit of a $40,947.90 ICE dividend check, addressed to STEED pursuant to the change-of-address form, into the MCNA LLC People's United Bank account, for STEED's personal use.

18. On or about September 5, 2017, STEED submitted an "Authorization for Electronic Funds Transfer-Credit" form with Computershare, in which he directed Computershare to pay MCNA LLC's People's United Bank account in connection with Mars's ownership of ICE shares. STEED also submitted with that form a purported internal Mars "finance bulletin" directing that all domestic wires go to the MCNA LLC People's United Bank account.

19. Based on those wire instructions, beginning on or about September 29, 2017, and periodically thereafter until in or about December 2022, STEED's MCNA LLC People's United Bank account (and the successor M&T Bank account) received electronic transfers from Computershare comprising Mars's ICE dividend payments.

20. In total, STEED diverted $717,971.66 in ICE dividend payments to his MCNA LLC bank account at People's United Bank and M&T Bank.

21. On or about January 16, 2023, STEED caused the submission to Computershare of a fraudulent letter purportedly from the Mars Treasurer, which authorized STEED to trade Mars's ICE shares.

22. On or about March 2, 2023, STEED submitted a letter (dated March 3, 2023) to Computershare, instructing Computershare to sell Mars's ICE shares. As a result, on or about March 6, 2023, Computershare executed the sale of Mars's ICE shares, resulting in net sale proceeds of $11,394,469.66. Computershare issued a check in that amount to Mars Incorporated, to STEED's attention, at an address in Greenwich, Connecticut.

23. On or about March 15, 2023, STEED deposited the Computershare check at a bank branch in Connecticut into the MCNA LLC M&T Bank account.

Executions of the Scheme and Artifice

24. On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, STEED did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, each wiring as set forth below constituting a separate count of this Indictment:

| Count | Date | Description of Interstate Wires Caused by STEED |
|---|---|---|
| 1 | May 10, 2021 | Interstate wire caused by the deposit of a $178,455.39 ICE dividend check into the MCNA LLC People's United Bank account |
| 2 | March 15, 2023 | Interstate wire caused by the deposit of a $11,394,469.66 check into the MCNA LLC M&T Bank account |
| 3 | September 19, 2023 | Email from STEED to U.S. Sugar Savannah Refinery with signed contract, invoice, and wiring instruction for sale of Mars re-export credits |
| 4 | September 27, 2023 | Wire transfer of $4,822,606.25 from a bank account of U.S. Sugar Savannah Refinery to the MCNA LLC M&T Bank account |

All in violation of Title 18, United States Code, Section 1343.

COUNTS FIVE THROUGH SEVEN
(Wire Fraud—Ibera LLC)

25. Paragraphs 1-3 are incorporated by reference.

26. On or about July 5, 2012, STEED caused the filing of Articles of Organization for Ibera LLC with the Connecticut Secretary of the State. The principal office address was listed as STEED's home address in Stamford, with STEED listed as the filing party, agent, and manager.

27. On or about August 3, 2012, STEED opened a bank account at Citibank N.A. ("Citibank") in the name of Ibera LLC, with himself as sole signatory. The account opening documents listed Ibera LLC's business as "Commodity Price Risk Management Consulting," and its location as STEED's home address.

## The Scheme and Artifice

28. From in or about July 2013 through and including December 2020, in the District of Connecticut and elsewhere, STEED, knowingly and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

29. The purpose of this scheme and artifice was for STEED to enrich himself by submitting for payment false invoices for services allegedly rendered by Ibera LLC to Mars Wrigley, and causing Mars Wrigley to pay for those services into the Ibera LLC Citibank account controlled by STEED, for STEED's own personal use. In total, during the course of this scheme, STEED caused Mars to pay nearly $580,000 based on false Ibera LLC invoices.

## Executions of the Scheme and Artifice

30. On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, STEED did knowingly transmit, and cause to be transmitted, by means of wire communication in

interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, each wiring as set forth below constituting a separate count of this Indictment:

| Count | Date | Description of Interstate Wires Caused by STEED |
|---|---|---|
| 5 | July 30, 2020 | Electronic transfer of $38,020.37 from a Mars bank account to the Ibera LLC Citibank account, in payment for a false Ibera LLC invoice |
| 6 | October 2, 2020 | Electronic transfer of $19,948.00 from a Mars bank account to the Ibera LLC Citibank account, in payment for a false Ibera LLC invoice |
| 7 | December 24, 2020 | Electronic transfer of $17,031.63 from a Mars bank account to the Ibera LLC Citibank account, in payment for a false Ibera LLC invoice |

All in violation of Title 18, United States Code, Section 1343.

COUNTS EIGHT AND NINE<br>(Tax Evasion)

31. Paragraphs 1-24 and 26-30 are incorporated by reference.

32. During calendar years 2014 through 2023, STEED received taxable income upon which there was substantial income tax due and owing to the United States of America, a substantial portion of which he did not report on any tax return filed with the Internal Revenue Service ("IRS").

33. In particular, during the course of the two respective wire fraud schemes described in Counts One through Seven above, STEED did not properly report the fraudulently obtained funds to the IRS as income.

34. By way of example, as charged in this Indictment between January 1 of each of the calendar years listed below until the date of the filing of the relevant tax return, in the District of Connecticut and elsewhere, STEED, a resident of Stamford, Connecticut, willfully attempted to evade and defeat substantial income tax due and owing by him and

his spouse to the United States of America, by committing the following affirmative acts, among others:

    a. Receiving substantial income from the above referenced schemes into the MCNA LLC People's United Bank account, later becoming the MCNA LLC M&T Bank account, and the Ibera LLC Citibank account, rather than an account in STEED's own name, providing the false impression that the payments were business income of Ibera LLC or MCNA LLC, rather than personal income to STEED himself; and

    b. preparing and causing to be prepared, and signing and causing to be signed, false and fraudulent U.S. Individual Income Tax Returns, Forms 1040, which were submitted to the IRS:

| Count | Tax Year | Date of filing | Approximate Total Unreported Income | Approximate Additional Tax Due and Owing |
|---|---|---|---|---|
| 8 | 2022 | April 14, 2023 | $4,321,218.40 | $1,594,739.00 |
| 9 | 2023 | April 12, 2024 | $16,179,575.91 | $5,981,483.00 |

All in violation of Title 26, United States Code, Section 7201.

FORFEITURE ALLEGATION
(Wire Fraud Offenses)

35. Upon conviction of one or more of the wire fraud offenses alleged in Counts One through Seven of this Indictment, STEED shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1343 (the wire fraud offenses), including:

  a. 40 Howard Road, Greenwich, CT 06831-3104, as described more fully in "Attachment A";

  b. Citibank Personal Wealth Management Account ending -2040, held in the name of Paul and Martina Steed;

  c. Citibank Personal Wealth Management Account ending -1653, held in the name of Paul and Martina Steed;

  d. LPL Financial Holdings Inc. account ending -1899, held in the name of Paul and Martina Steed;

  e. LPL Financial Holdings Inc. account ending -3763, held in the name of Paul and Martina Steed;

  f. LPL Financial Holdings Inc. account ending -3586, held in the name of Paul and Martina Steed;

  g. LPL Financial Holdings Inc. account ending -8659, held in the name of Paul and Martina Steed;

  h. LPL Financial Holdings Inc. account ending -4738, held in the name of Paul and Martina Steed;

  i. Pershing LLC account ending -9085, held in the name of Paul and Martina Steed; and

  j. A sum of money equal to the total amount of proceeds obtained as a result of the violations.

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other

property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1); Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
FOREPERSON

UNITED STATES OF AMERICA

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY

DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEY

## ATTACHMENT A TO INDICTMENT

All that certain tract, piece or parcel of land, situated in the Town of Greenwich, County of Fairfield and State of Connecticut bounded and described as follows:

Beginning at a point along the division line of lands of Joseph S. Wilcox, Jr. and land of Bruce S. Nicholas and Phyllis W. Nicholas said point being located S. 63° 13' 10" W. 629.7 feet West of the westerly line of Howard Road; thence proceeding in a southerly direction along land of said Wilcox the following courses and distances: S. 27° 55' 30" E. 592.92 feet, S. 22° 05' 10" E. 114.72 feet, 2.45 feet along the arc of a circle curving to the right on a radius of 1571.05 feet to land of Harry E. Peden, Jr. and Samuel J. Steward, III, thence along land of said Peden and Stewart 245.55 feet along the arc of a circle curving to the right on a radius of 1571.05 feet and S. 13° 02' 30" E. 64.41 feet to land now or formerly of John Jastrab and Julia Jastrab; thence continuing in a southerly direction along land now or formerly of said Jastrab S. 13° 02' 30" E.160.52 feet to the northerly end of the turnaround of Meeting House Road; thence proceeding in a westerly direction 25.785 feet along the arc of a circle curving to the left on a radius of 60 feet to other land of Grantor, thence proceeding in a northerly direction through other land of the Grantor the following courses and distances: N. 13° 02' 30" W. 219.47 feet, 244.05 feet along the arc of a circle curving to the left on a radius of 1546.05 feet and N. 22° 05' 10" 114.72 feet and thence proceeding in a general westerly direction still through other land of the Grantor S. 79° 11' 50" W. 378.93 feet to land now or formerly of David H. Hughes, thence proceeding in a northerly direction along land now or formerly of said Hughes N. 11° 9" W. 130.0 feet to land now or formerly of Lawrence Donegan Jr., thence continuing in a northerly direction along land of said Donegan N 11° 6' 50" W 375.22 feet to land of said Nicholas, thence proceeding easterly along land of said Nicholas N. 63° 13' 30" E 241.0 feet to the point or place of beginning

and containing 4.335 acres.

The general boundaries of the above described tract of land are northerly by land of Bruce S. Nicholas and Phyllis W. Nicholas; easterly by land of Joseph S. Wilcox, Jr., Harry E. Peden, Jr. and Samuel J. Stewart, III, and John Jastrab and Julia Jastrab; southerly by Meeting House Road and other land of the Grantor; westerly by land now or formerly of David H. Hughes and land now or formerly of Lawrence Donegan, Jr. and other land of the Grantor.

Together with a right of way for all lawful purposes including installation of underground utilities in common with others to whom such right of way may hereafter be granted in, over, and upon the travelled portion of the accessway located immediately to the west and contiguous to the accessway forming a part of the subject premises, commencing at the northerly end of the Meeting House Road turnaround and extending in a general northerly direction.

Said premises are conveyed subject to the following:

1. Restrictive covenants and agreements contained in a deed from Millfield Corporation to Joseph S. Wilcox, Jr., dated April 21, 1965, and recorded in the Greenwich Land records in Book 720 at Page 618.

2. Reservations contained in a deed from Joseph S. Wilcox, Jr. to Wilcox Land and Development Corp, dated August 5, 1970, and recorded in said Land Records in Book 803 at Page 295.

3. Grants contained in a deed from Joseph S. Wilcox, Jr. to Harry E. Peden, Jr. and Samuel J. Stewart, III, dated December 21, 1971, and recorded in said Land Records in Book 826 at Page 397.

4. Grant from Wilcox Land and Development Corp. to Joseph S. Wilcox, Jr., dated February 9, 1972, and recorded in said Land Records in Book 828 at Page 411.

5. Restrictive covenants and agreements recorded in Warranty Deed from Wilcox Land Development Corp. to Bruce S. Nicholas and Phyllis W. Nicholas, dated March 1,1972, and recorded in said Land Records in Book 829 at Page 202.