UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------x
:
UNITED STATES OF AMERICA            :
: Case No. 25 CR 48 (KAD)
:
v.                                  :
:
PAUL STEED,                         :
:
Defendant.                :
:
---------------------------------------------------x

# MOTION OF DEFENDANT PAUL STEED
# FOR RELEASE PENDING TRIAL

Defendant Paul Steed, through his undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3142, for an order granting him release pending trial pursuant to the conditions set forth herein.

## INTRODUCTION

Mr. Steed was arrested on the morning of March 26, 2025, and was presented before Magistrate Judge Vatti. Judge Vatti ordered Mr. Steed detained pending trial, finding based on the record at that time that no condition or combination of conditions of release would reasonably assure Mr. Steed's appearance at trial. However, given that Mr. Steed had just been arrested and only had time to prepare a modest bail package, Judge Vatti noted that his decision was "without prejudice to a new package and development of a record that addresses the Court's concerns." *See* ECF 11.

Mr. Steed respectfully submits that the substantial bail package and conditions proposed herein are more than sufficient to reasonably assure his presence as required at all future proceedings. Those conditions include an extraordinarily large bond amount of $5,000,000, five different co-signers with significant financial means who have known Mr. Steed since childhood and college, full security for the bond in the form of $5,000,000 in cash and real estate, and home detention and electronic monitoring as directed by Pretrial Services. This package mitigates any risk of flight by securing his appearance with substantial assets and other conditions that provide powerful moral suasion for his appearance, combined with the restrictions of home confinement and electronic monitoring.

Furthermore, additional clarifying information that is now available addresses and alleviates the concerns noted by Judge Vatti in his preliminary decision ordering Mr. Steed's detention, which mainly involved Mr. Steed's ties to Argentina. As discussed below, the impression created at the detention hearing that Mr. Steed has any substantial financial resources available to him in Argentina is inaccurate. And more importantly, while Mr. Steed undoubtedly has ties to his birth country, those ties pale in comparison to the life and relationships he has built in the United States since his childhood and would be leaving behind (and betraying) if he fled, including decades-long relationships with his wife and all of his closest friends.

## **STANDARD**

As the Court is well aware, the Bail Reform Act requires pretrial release on a personal recognizance bond "unless the [Court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Even where the Court has identified a risk of flight, the law nonetheless requires pretrial release "subject to the least restrictive further condition, or

combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required . . . ." 18 U.S.C. § 3142(c)(1)(B). The presumptions of release and innocence apply to Mr. Steed, 18 U.S.C. §§ 3142(e), (j), and the government carries the burden of proving that there is "no condition, or combination of conditions" that will "reasonably assure" the Court that Mr. Steed will appear in Court following his release, 18 U.S.C. § 3142(c). Pretrial detention is the exception, not the rule, and should be reserved for "extreme cases." *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986); *see also, e.g.*, *United States v. Madoff*, 586 F. Supp.2d 240, 247 (S.D.N.Y. 2009) ("[I]t is only a limited group of offenders who should be denied bail pending trial.") (citation omitted); *United States v. Scarpa*, 815 F. Supp. 88, 91 (E.D.N.Y. 1993) (stating that pretrial detention "has been and should remain the exceptional practice").

## ARGUMENT

We respectfully submit that the following proposed combination of conditions of pretrial release are sufficient to reasonably ensure Mr. Steed's appearance in Court throughout these proceedings:

(1) A $5 million personal recognizance bond, co-signed by five financially responsible persons, and secured by (1) the personal residence of Co-Signer 1, valued in public sources at approximately $5.2 million, approximately $2.5 million of which is unencumbered by a mortgage; (2) approximately $2.1 million in cash posted by Co-Signer 2; (3) $250,000 in cash posted by Co-Signer 3; and (4) $150,000 in cash posted by Co-Signer 4.[1]

(2) Home detention at Mr. Steed's house in the District of Connecticut, and electronic monitoring as directed by Pretrial Services.

(3) Travel restricted to the District of Connecticut.

---

[1] Co-Signer 1 has begun the process of completing a title search and appraisal on his home. The stated value of $5.2 million is based upon the property's estimated valuation on Zillow.com. Undersigned counsel will confirm promptly the value, and the portion of unencumbered equity, when the information is available. Co-Signers 2, 3, and 4 are committed to posting in cash the balance unsecured after Co-Signer 1's home is posted.

(4) Continued surrender of Mr. Steed's United States and Argentina passports, and an agreement not to secure new travel documents.

(5) Agreement waiving any extradition rights Mr. Steed may have as a citizen of Argentina and agreeing to be returned to the United States immediately to face these proceedings if he were found to be in Argentina following his pretrial release.

(6) Associational bars as deemed appropriate by the Court.

(7) Supervision by Pretrial Services, as directed.

The proposed co-signers are highly reputable individuals with substantial financial resources. Each has been a close friend of Mr. Steed since either his childhood or early college years and has remained in close regular contact with him throughout his life. The co-signers are fully aware of the charges against Mr. Steed, the potential punishment he faces, his ties to Argentina, and the government's concerns regarding risk of flight. The co-signers are nonetheless willing to co-sign and post property in support of a substantial $5 million bond, recognizing that Mr. Steed fully intends to face these proceedings following his release and will not attempt to flee. The moral suasion provided by the proposed bail package is significant: Mr. Steed's flight would betray the trust his closest friends are placing in him and expose them to substantial financial harm, including the potential loss of one of his closest friend's family home. The government has been provided with personal details and contact information for each of the co-signers, so that it may confirm their financial means and their understanding of the consequences of co-signing the bond.

Mr. Steed has agreed to sign a waiver of extradition which is provided for in the extradition treaty between the United States and Argentina. Extradition Treaty, U.S.-Arg., art. 17, June 10, 1997, T.I.A.S. No. 12,866, at 10. While the government has raised concerns to Mr. Steed's counsel regarding the enforceability of a waiver of extradition, at least one court ordered two defendants with ties to Argentina to execute waivers of extradition: *United States v. Salvagno*, 314 F. Supp. 2d 115 (N.D.N.Y. 2004). Moreover, the reality is that the proposed restrictions make any flight to

4

Argentina effectively impossible. Mr. Steed's passports have been seized, he will be confined to his home, and he will be subject to electronic monitoring and all other supervision deemed appropriate by Pretrial Services.

Mr. Steed's ties to the United States and Connecticut are deep and long-standing as he has lived almost his entire life here. He was raised in the United States from the age of seven, graduated from high school in Greenwich and Georgetown University in Washington, D.C. , and then built his life and career here in Connecticut with his wife of twenty-four years, their rescue animals, and his many close friends. He has lived continuously in the United States for the past fifty-one years, since the age of seven. Mr. Steed and his wife own a home in Stamford, CT, and in 2023 bought a home in Greenwich, CT, which they were in the process of renovating at the time of Mr. Steed's arrest. While the government has seized the Greenwich home and has proffered that the Stamford may also be subject to restitution, Mr. Steed and his wife's roots in Connecticut are clear.

Mr. Steed's potential lack of significant *financial* ties to Connecticut, after the seizure of the vast majority of his assets, does not change the fact that his life is here, and there is no convincing basis to conclude that he would abandon his wife, friends, and animals to live the life of a fugitive in Argentina. The fact that Mr. Steed is a dual citizen with some ties abroad should not preclude bail under reasonable conditions. *See, e.g.*, *United States v. Javice*, No. 1:23-cr-00251-AKH (S.D.N.Y. 2023) at ECF 3, 9 (combining bond, travel restrictions, and GPS monitoring where defendant was a dual citizen of the United States and France and charged with fraud relating to the sale of her company for $175 million);[2] *United States v. Murphy*, No. 3:22-

---

[2] The defendant in that case remains out on bail even after being convicted, with the only disputed issue relating to whether the defendant would have to continue wearing a GPS anklet while awaiting sentencing. *See Javice*, No. 1:23-cr-00251-AKH (S.D.N.Y. 2023) at ECF 371, 372.

cr-00190-VAB, (D. Conn. 2022) at ECF 15 (combining bond, travel restrictions, and home confinement where defendant fled to Brazil to avoid detection and was extradited from Brazil); *United States v. Flotron*, No. 3:17-cr-00220-JAM (D. Conn. 2017) at ECF 10 (combing bond, travel restrictions, home confinement, and GPS monitoring where defendant was a citizen and resident of Sweden arrested while visiting his girlfriend in the United States accused of wire fraud, commodities fraud, and spoofing); *United States v. Karni*, 298 F. Supp. 2d 129, 133 (D.D.C. 2004) (granting pretrial release to Israeli national residing in South Africa who had "no ties to the United States" despite strong community ties in South Africa and familial ties, citizenship, and having spent the first twenty-nine years of his life in Israel); *United States v. Hanson*, 613 F. Supp. 2d 85 (D.D.C. 2009) (ordering pretrial release of defendant who had "strong ties to China (including the fact that she owns property in China)" who resided abroad and imposing restrictions involving GPS monitoring and home confinement); *United States v. Sidoo*, No. 19-cr-10080-NMG (D. Mass. 2019) at ECF 23 (allowing Canadian citizen charged with conspiracy to commit wire fraud and other forms of fraud to reside in his home in Canada during the pendency of his case and imposing travel restrictions in addition to bond). Even if Mr. Steed could not be extradited from Argentina—a point the government has not even claimed, let alone established—the "bail statute does not . . . require that foreign defendants be detained simply because their return cannot be guaranteed through extradition." *United States v. Hansen*, 108 F. App'x 331 (6th Cir. 2004) (affirming pretrial release of defendant, a resident and citizen of Denmark, to his home in Denmark from where he could not be extradited).

    The government has also overstated Mr. Steed's ties to Argentina. Mr. Steed was born in Argentina but has not lived there since his parents moved him to the United States at the age of seven. His ties to Argentina were effectively non-existent until his parents returned there from the

United States after his father's retirement. Since his parents' return to Argentina, Mr. Steed has traveled there only periodically for short visits. His father has since passed away, and his mother is eighty-five years old.

The government also created the impression at the detention hearing that Mr. Steed has substantial financial assets waiting for him in Argentina in the event he fled. That is not true. Mr. Steed does not "own a cattle and tea ranch in Argentina." ECF 11. He owns a modest plot of land in a remote area miles outside of Buenos Aires, which has been planted with tea. The tea plants are immature, and the property generates no income. The cattle ranch referenced by the government is owned by Mr. Steed's mother and has been failing financially for years.

After his father died, Mr. Steed became aware that his mother was struggling to maintain the ranch in Argentina and was at risk of losing it to creditors, which would deprive his mother of her only means of supporting herself and Mr. Steed's sister, who lives with his mother and requires significant care. Over a number of years, Mr. Steed has transferred funds to his mother and the entity that owns her ranch. These funds paid for his mother's and sister's ongoing living expenses, paid off portions of the debts encumbering the ranch, and were used to keep the ranch in some working order. The ranch continues to operate at a substantial financial loss. Undersigned counsel has communicated with the accountant in Argentina who manages finances for Mr. Steed's mother and her ranch, and he has confirmed that the ranch is effectively insolvent.

At the detention hearing, the government further proffered that "several millions of dollars traceable to the alleged fraud remain unaccounted for." ECF 11. The government has already seized approximately $18,834,272.54. Substantially all of Mr. Steed's remaining transfers and assets which the government has flagged as traceable to the alleged fraud have been identified for the government. The government itself alleges that $2.525 million of this amount was used by Mr.

Steed to purchase his home in Greenwich, CT. Since the time of the initial detention hearing, undersigned counsel has provided the government with payment records and invoices reflecting substantial amounts that were also expended on renovations of the Greenwich, CT home, the location and amount of other illiquid investments, and the brokerage through which Mr. Steed incurred significant trading losses. Thus, the more complete information that is now available to the government identifies the destination or location of the vast majority of the allegedly traceable funds, and establishes that there are no significant, accessible assets on which Mr. Steed could rely in the unlikely event he attempted to flee.

Mr. Steed is not required to demonstrate that the risk of flight is non-existent for him to be entitled to bail pending trial. *See Madoff*, 586 F. Supp. 2d at 249 ("The [Bail Reform] Act does not require that the risk be zero, but that conditions imposed 'reasonably assure' appearance."). Even if this Court finds that Mr. Steed poses some risk of flight due to his dual citizenship and family ties to Argentina, the substantial bail package proposed adequately redresses any such risk. *See, e.g.*, *United States v. Esposito*, 309 F. Supp. 3d 24, 31 (S.D.N.Y. 2018) (holding that although the defendant "poses some . . . risk of flight . . . these risks can be reasonably mitigated by the bail conditions set forth in the Bail Order."); *United States v. Dreier*, 596 F. Supp. 2d 831, 833-35 (S.D.N.Y. 2009) (releasing defendant on substantial conditions, including home confinement and a $10 million personal recognizance bond, despite finding "that [the defendant], if released without conditions, would pose a genuine risk of flight."); *United States v. Jones*, 143 F. Supp. 3d 78, 85, 88-89 (W.D.N.Y. 2015) (setting bail conditions "sufficient to secure Defendant's appearance at subsequent court proceedings," after finding that the defendant, who was extradited to the United States, "has no ties to the United States and no legal status in the United States," and "posed a risk of flight"); *United States v. Valdez*, 426 F Supp 2d 180, 184 (S.D.N.Y. 2006) (setting bail after

8

finding "that Valdez does have some ties to the United States, but that, without additional security, they seem to be outweighed by his ties to the Dominican Republic").

While the charges against Mr. Steed are serious, and the alleged loss amount is large, these factors alone do not warrant continued pretrial detention. *See United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988) ("[W]e have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight."); *United States v. Paulino*, 335 F. Supp. 3d 600, 619 (S.D.N.Y. 2018) ("[I]t is well-established that a greater showing than commission of a serious crime and the fact of a potentially long sentence is necessary to support a finding of risk of flight."). There are numerous recent cases in which defendants with international ties were facing charges of significant fraud, yet were granted bail on reasonable conditions. There is no apparent reason Mr. Steed should be treated differently. *See, e.g.*, *Javice*, No. 1:23-cr-00251-AKH (S.D.N.Y. 2023) at ECF 3, 9 (setting $2 million bond secured by the defendant's residence and co-signed by two others, restricting defendant's travel, and using GPS monitoring for a dual citizen of the United States and France charged with and later convicted of wire fraud, among other counts, for defrauding J.P. Morgan into purchasing her company for $175 million); *United States v. Petrone*, No. 3:22-cr-00061-VDO (D. Conn. 2022) at ECF 9 (setting bond of $1 million—cosigned by three others and secured by five pieces of real property—for former administrator of Yale School of Medicine charged with fraud and money laundering of approximately $30 million, and allowing defendant and co-signers to sign electronically and perfect and secure the bond package within two weeks); *United States v. Goldberg*, No. 3:09-mj-00285-DFM (D. Conn. 2009) at ECF 6 (setting bond at $1 million and restricting travel of defendant who operated a $100 million Ponzi scheme that defrauded investors of more than $30 million over a twelve-year period); *United States v. Meissner*, No. 3:24-cr-00151-MPS (D. Conn.

9

2024) at ECF 9 (setting bond at $100,000 and restricting travel for defendant accused of stealing $4.46 million from a former employer); *Murphy*, No. 3:22-cr-00190-VAB, (D. Conn. 2022) at ECF 15 (setting bond at $250,000 to be secured by real property, restricting travel, and ordering home confinement of defendant who was extradited from Brazil and accused of operating an investment firm to steal approximately $3.5 million in investor funds).

Finally, Magistrate Judge Vatti raised a concern regarding the current status of Mr. Steed's marriage, based on the government's assertion that Mr. Steed depleted a savings account jointly held with his wife. The funds from the savings account were used for renovations on the Greenwich, CT home, which Mr. Steed owns jointly with his wife. The use of jointly owned funds to renovate a jointly owned home does not demonstrate any break in Mr. Steed's marriage that justifies the rejection of his wife as an appropriate custodian. Mr. Steed's wife has confirmed that she welcomes Mr. Steed's return home upon his release and is committed to acting as a custodian while these proceedings are pending.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion for release pending trial.

Dated: April 16, 2025                                     Respectfully submitted,


                                                     FINN DIXON & HERLING LLP


                                        By:  /s/ *Deirdre M. Daly*
                                               David M. Daly (ct23128)
                                               David R. Allen (ct30827)
                                               6 Landmark Square
                                               Stamford, CT 06901-2704
                                               (203) 325-5000
                                               ddaly@fdh.com
                                               dallen@fdh.com


                                               *Counsel for Defendant Paul Steed*

**CERTIFICATION**

  I hereby certify that on April 16, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

              /s/ Deirdre M. Daly
              Deirdre M. Daly (ct23128)
              FINN DIXON & HERLING LLP
              Six Landmark Square
              Stamford, CT  06901-2704
              Tel: (203) 325-5000
              Fax: (203) 325-5001
              E-mail: ddaly@fdh.com